UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00153-GNS-HBB

ROBERT T. CARROLL                                                      PLAINTIFF

v.

TROY YOUNG; and
CITY OF RUSSELL SPRINGS, KENTUCKY                                    DEFENDANTS

### **MEMORANDUM OPINION AND ORDER.**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 47-1) and Defendants' Motion for Leave to Exceed Page Limits (DN 47). The motions are ripe for adjudication. For the reasons outlined below, the motions are **GRANTED**.

### I.       STATEMENT OF FACTS

On December 3, 2016, Plaintiff Robert T. Carroll ("Carroll") was arrested for rape in the first degree by Defendant Troy Young ("Young"), a police officer employed by the City of Russell Springs, Kentucky (the "City"). (Defs.' Mot. Summ. J. Ex. 1, at 5, DN 47-3 [hereinafter Police Report]). Carroll was accused of raping Bethany Miller ("Miller") after spending the evening at a gathering in Miller's apartment building with her, Latisha Hill ("Hill"), Jessie Bunch ("Bunch"), and Anita Caldwell ("Caldwell"). (Police Report 5). In her victim statement, Miller alleged that Carroll forced himself upon her despite her objections while she was in bed and he was supposed to be sleeping on her couch. (Defs.' Mot. Summ. J. Ex. 2, at 2, DN 47-4 [hereinafter Statements]). Miller reported that Hill, Bunch, and Caldwell heard her pleas for Carroll to stop and then ran into her apartment. (Statements 2). Hill, Bunch, and Caldwell corroborated Miller's statement. (*See* Statements 3-6). Young then took Carroll to the hospital for a physical exam and forensic testing.

(Carroll Dep. 139:11-20, Sept. 20, 2021, DN 47-5).  Carroll was indicted by a grand jury and awaited trial for twenty-two months. At his trial, the jury returned a verdict of not guilty.  (Am. Compl. ¶ 1).

Carroll initiated this action against Young and the City alleging federal due process violations, fabrication of false evidence, malicious prosecution, supervisory liability, and failure to intervene, in addition to Kentucky state law claims of negligent supervision, *respondeat superior*, malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (Am. Compl. ¶¶ 68-129).  Defendants jointly now move for summary judgment.  (Defs.' Mot. Summ. J., DN 47-1).[1]

## II.     JURISDICTION

Subject matter jurisdiction is afforded over this matter through federal question and supplemental jurisdiction.  *See* 28 U.S.C. §§ 1331, 1367(a).

## III.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the

---

[1] Carroll does not contest Defendants' motion for leave to exceed page limits, therefore it is granted.

truth at trial," but the evidence is "not required to be resolved conclusively in favor of the party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).  If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV.    DISCUSSION

### A.    Time Barred Claims

Defendants argue that they are entitled to summary judgment on a majority of Carroll's claims because they are time-barred.  (Defs.' Mem. Supp. Mot. Summ. J. 4-5, DN 47-2 [hereinafter Defs.' Mem.]).  Specifically, they argue that Carroll cannot maintain his claims pursuant to 42 U.S.C. § 1983, including due process violations, fabrication of evidence, malicious prosecution, supervisory liability, and failure to intervene, in addition to his state law claims for malicious prosecution and abuse of process.  (Defs.' Mem. 4).  In response to Defendants' argument that his claims are time-barred, Carroll does not argue that the statute of limitations does not apply here, nor that the accrual dates were tolled.  He only states that he "strongly disagrees with the conclusion that the Defendants are entitled to any Summary Judgment based on any facts and/or law or authority."  (Pl.'s Resp. Defs.' Mot. Summ. J. 10, DN 48 [hereinafter Pl.'s Resp.]).

### 1.    *Federal Claims*

Section 1983 does not contain its own statute of limitations period, but it is well settled that constitutional claims asserted under Section 1983 are governed by the applicable state personal injury statute of limitations.  *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)).  Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued . . . ." KRS 413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  Though the pertinent statute of limitations is

3

determined by state law, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)).

In Section 1983 claims based on fabrication of false evidence, the statute of limitations does not begin to run until the criminal indictment is no longer outstanding. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citation omitted); *Jenkins v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:17-cv-151-DJH, 2018 U.S. Dist. LEXIS 3414, at *20-21 (W.D. Ky. Jan. 9, 2018) (citing *Mills*, 860 F.3d at 484). Defendants argue that Carroll received a not guilty verdict on October 18, 2018, and that the statute of limitations expired on October 18, 2019, five days before Carroll filed this action. (Defs.' Mem. 5; *see* Compl.; Carroll Dep. 245:13-15). The indictment, however, was outstanding until judgment was entered in Carroll's favor on October 25, 2018. (Am. Compl. ¶ 1, DN 7). Therefore, the statute of limitations expired on October 25, 2019, after Carroll filed the Complaint in this action. Carroll's fabrication of evidence claim is thus not time barred and may proceed.

In a malicious prosecution action, accrual begins when "the plaintiff knows or has reason to know of" the "termination of the prior criminal proceeding in favor of the accused . . . ." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Eidson*, 510 F.3d at 635; *Heck v. Humphrey*, 512 U.S. 477, 484 (1974)). Defendants argue that Carroll knew or had reason to know of "the favorable termination" of the criminal proceedings when he was released from jail upon his acquittal on October 18, 2018. (Defs.' Mem. 5; *see* Carroll Dep. 245:13-15). The criminal charge against Carroll, however, was not terminated until the judgment of dismissal was entered on October 25, 2018. Thus, although Carroll may have known of his successful defense of the criminal charges against him on October 18, the termination did not occur, nor did he know of the

dismissal until October 25.  *See King*, 852 F.3d at 579 ("When the Kentucky Court of Appeals granted King relief, it vacated her *Alford* plea, but it did not result immediately in a 'termination of the . . . criminal proceeding in favor of the accused," as *Heck* would require of the limitations period to begin."  (citation omitted)).  Therefore, the statute of limitations expired on October 25, 2019, after Carroll filed this civil action and his federal malicious prosecution claim is not time barred.

In a due process action under Section 1983, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984) (citations omitted).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Id.*  "This test is an objective one, and the Court determines 'what event should have alerted the typical lay person to protect his or her rights.'"  *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2002) (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).  Carroll alleges that his due process rights were violated by keeping him in custody, failing to set a reasonable bail bond, and preventing him from continuing his career.  (Am. Compl. ¶¶ 69, 71, 73).  These circumstances alleged by Carroll would have alerted him of his injury throughout the time of his confinement and trial.  Carroll's trial ended on October 18, 2018, and thus Carroll would have been aware of his injuries by that date.  Therefore, his due process claims are time barred because they needed to be asserted before October 18, 2019.  (*See* Compl. (asserting Carroll's claims on October 23, 2019)).

Supervisory liability and failure to intervene claims under Section 1983 accrue at the same time as the underlying due process, fabrication of false evidence, and malicious prosecution claims upon which they are based.  *Hoskins v. Knox Cnty.*, No. 17-84-DLB-HAI, 2018 U.S. Dist. LEXIS

42694, at *45-46, *48-49 (E.D. Ky. Mar. 15, 2018).  As noted above, Carroll's due process claim is time barred, but his fabrication of evidence and malicious prosecution claims are not.  Therefore, his supervisory liability and failure to intervene claims are time barred to the extent that they are based on the underlying due process claim.

2.     *State Claims*

The statute of limitations for malicious prosecution under Kentucky law is one year, accruing at the time the underlying litigation has been terminated.  KRS 413.140(1)(c); *Demoisey v. Ostermiller*, 659 S.W.3d 757, 764 (Ky. App. 2018) (quoting *Demoisey v. Ostermiller*, Nos. 2014-CA-001827-MR/2014-CA-001864-MR, 2016 Ky. App. Unpub. 876, at *40 (Ky. App. May 6, 2016)).  As noted above, the underlying litigation was terminated on October 25, 2018.  Therefore, the statute of limitations had not expired when Carroll filed this action on October 23, 2019, and his claim is not time-barred.

The statute of limitations for abuse of process under Kentucky law is one year, accruing at the time of the conduct complained of occurred.  *Demoisey*, 659 S.W.3d at 765 (quoting *Demoisey*, 2016 Ky. App. Unpub. 876, at *42).  Carroll alleges that Defendants abused process by "proceed[ing] with [t]he prosecution without any evidence of a rape having taken place . . . ." (Am. Compl. ¶ 125).  The decision to proceed with the prosecution occurred at some point prior to the conclusion of the trial on October 18, 2018.  Therefore, his abuse of process claim is time barred because it must have been asserted before October 18, 2019.

B.     <u>Remaining Claims</u>

With regard to the merits of Carroll's claims, he presents various broad arguments that do not apply to specific causes of action, but rather pertain to Defendants' motion as a whole.  These arguments will be discussed before analyses of the individual claims.

Carroll primarily relies on his general assertion that Defendants have not presented enough evidence to support summary judgment in their favor.  (Pl.'s Resp. 10 (asserting that Defendants "have presented no facts, testimony, recordings, or statements of witnesses including but not limited to [Carroll], which supports their argument that a Summary Judgment is not only proper, but is demanded by some lack of action on the party of [Carroll].")).  Specifically, he contends that it is the Defendants' sole burden to establish their case, and that "he has no certain obligation to prove all of his case through discovery and prior to trial . . . ."  (Pl.'s Resp. 1).  Indeed, Defendants do have the burden of demonstrating that there is no genuine issue as to any material fact relevant to each of Carroll's claims.  *Celotex Corp.*, 477 U.S. at 323; Fed. R. Civ. P. 56(a).  The burden then shifts to Carroll, however, to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *see Celotex Corp.*, 477 U.S. at 323-24 ("The party seeking Summary Judgment always bears the *initial* responsibility of informing the District Court of the bases of its Motion . . . ." (emphasis added)).  While Carroll does not have the responsibility to set forth his entire case, at this juncture he must provide the Court with specific proof in the record sufficient to support the denial of Defendants' motion; without such evidence, summary judgment in Defendants' favor may be warranted.

Carroll appears to rely heavily on the fact that Defendants do not support their motion with potential evidence, such as testimony transcripts[2] from the underlying criminal action, going even so far as to say that "Defendants[] . . . are tasked with the responsibility of reviewing the trial court record including the audio of the trial . . . ."  (Pl.'s Resp. 7; *see* Pl.'s Resp. 8 ("Another source of

---

[2] Carroll notes that he has been unable to procure the transcripts of the underlying criminal action because "he has not made financial arrangements to have the transcript transcribed due to up front expenses," but will do so as needed for trial in this action.  (Pl.'s Resp. 6).

evidence, which is as available to Defendants' counsel as it is to Plaintiff's counsel, is the trial transcript and records of the Russell Circuit Court . . . they may be copied and/or listened to by the Defendants . . . .   Those are public records . . . .   The Defendant[s] . . . are all well aware of the availability of those documents and the office which maintains them."); Pl.'s Resp. 1 ("The Defendants . . . are assuming of what they believe to be facts without such facts being established by the proof and without any definite reference to the record [of the] underlying criminal case.")). In fact, it is not Defendants' responsibility to put every plausibly relevant piece of evidence into the record when they file a motion—they need only present evidence that supports the arguments in their motion.  (*But cf.* Pl.'s Resp. 11 ("[T]he Defendants are not entitled to [] Summary Judgment . . . just because [Carroll] has not flooded the record with depositions, affidavits, . . . interrogatories, request[s] for admissions, or otherwise.   The burden is not [Carroll]'s to bear; it is not his Motion.")).   If there is evidence that contradicts or undermines what the Defendants have proffered, it is Carroll's responsibility to demonstrate a genuine issue of material fact by citing to the record.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

Carroll's generalized argument in response to Defendants' assertions regarding each count is that Defendants did not have enough proof to secure a conviction during the state court criminal trial, and Carroll's acquittal is sufficient to create a genuine issue of material fact as to the claims alleged here.  (*See* Pl.'s Resp. 2, 5 ("[T]he overwhelming evidence that [] [Carroll] . . . was not guilty of the charges . . . for which he was tried, provide[s] [Carroll] with a firm foundation for the claiming of the violation of his civil rights."); Pl.'s Resp. 12 ("[T]he Defendants['] allegation that they are entitled to [] Summary Judgment is met squarely by the result of the . . . unanimous verdict of not guilty as constituting a legitimate contention to these Defendants' Motion for Summary Judgment.  The subsequent dismissal of the Indictment established the basis for this Court action

to be filed and prosecuted." (emphasis omitted))). Although Carroll's acquittal may be pertinent to the present motion, the acquittal alone is not sufficient to satisfy all of the elements of Carroll's claims. Each claim must be analyzed according to its specific elements of the claim. To succeed in their motion for summary judgment, the Defendants need not show that they provided enough evidence to succeed in the state court action; they need only show that there is no genuine issue as to any material fact for each of Carroll's alleged causes of action.

Carroll also claims that he has been unable to effectively conduct discovery due to COVID-19 and "tremendous volumes of unresolved cases" clogging federal and state courts creating a "logjam." (Pl.'s Resp. 7, 13). He asserts that he "has been hampered by, if not deprived of, opportunities to conduct discovery on an ongoing basis" and he has been prevented from "pursuing more aggressively the pretrial proof which would bolster his case . . . ." (Pl.'s Resp. 13). Carroll does not specify how any alleged backlog has impeded his ability to conduct discovery beyond his general allegations. Carroll has had ample time to conduct discovery despite any complications that may have arisen. The original scheduling order was entered on March 19, 2020, and pre-trial fact discovery concluded on June 30, 2022, providing Carroll with an adequate amount of time to propound discovery. (Order, DN 15; Order, DN 33); *see Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." (emphasis added)); (*see also* Mem. Op. & Order, DN 52 (denying Carroll's attempt to extended discovery after having over two years)).

1.   ***Federal Claims***

a.   **Fabrication of Evidence**

Carroll alleges that the Defendants fabricated "false reports and [] statements attributed to the witnesses interviewed by . . . Young which w[ere] introduced at the Grand Jury and Trial proceedings." (Am. Compl. ¶ 77). He claims that Young and the City "knew or should have known that such statements . . . had been fabricated . . . ." (Am. Compl. ¶ 77).

"A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014) (citation omitted). "The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (alterations in original) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)); *accord Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) ("It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." (citation omitted)).

Defendants argue that there is no evidence to suggest that they fabricated any evidence in Carroll's trial and Carroll does not rebut this argument with any contradictory evidence. Indeed, Carroll acknowledged that Defendants did not fabricate evidence, but rather "didn't investigate and make sure the statements w[ere] true . . . ." (Defs.' Mem. 13 (quoting Carroll Dep. 196-97))[3]; *see Averett v. Hardy*, No. 3:19-cv-116-DJH-RSE, 2020 U.S. Dist. LEXIS 36471, at *22 (W.D. Ky.

---

[3] Defendants have quoted this statement from Carroll's deposition which is not included in the record. Carroll does not contend that the City has misrepresented his deposition testimony.

Mar. 3, 2020) ("[A]lthough [plaintiff] is entitled to a criminal prosecution free from fabricated evidence . . . [plaintiff] has [not] alleged that [defendant] fabricated evidence . . . ." (internal citation omitted) (citation omitted)); *cf. Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) ("[A]ssuming that the plaintiffs provided sufficient facts to establish that the investigation was incompetent or negligent, an 'incompetent or negligent investigation' is insufficient to establish a constitutional violation." (citation omitted)).  As Carroll has not directed the Court to any evidence supporting the assertion that Defendants themselves fabricated evidence used against Carroll, they are entitled to summary judgment in their favor.

Carroll also alleges that Defendants committed a *Brady* violation by failing to provide the prosecutor with evidence.  (Am. Compl. ¶ 63).  *See generally Brady v. Maryland*, 373 U.S. 83 (1963).  As Defendants respond, where "the underlying criminal proceeding terminated in [the plaintiff's] favor, he has not been injured by the act of wrongful suppression of exculpatory evidence," and therefore Carroll's *Brady* claim may not proceed because he was not convicted of the underlying crime.  *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988); *see Anderson v. Knox Cnty.*, No. 6:17-133-KKC, 2018 U.S. Dist. LEXIS 170563, at *17 (E.D. Ky. Oct. 3, 2018).  Since there is no dispute that Carroll was acquitted of the criminal charge, his *Brady* claim fails.

### b.    Malicious Prosecution

Carroll alleges Defendants engaged in malicious prosecution because the investigation was "objectively unreasonable" and "was undertaken intentionally with indifference to [Carroll's] constitutional rights."  (Am. Compl. ¶ 87).

To maintain a malicious prosecution claim under Section 1983, a plaintiff must demonstrate that:  (1) there was a criminal prosecution initiated against him, (2) the defendant was

11

involved in the decision to prosecute, (3) there was a lack of probable cause for the prosecution, (4) there was a resulting deprivation of liberty, and (5) the proceeding was terminated in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

"[T]here must be some element of blameworthiness or culpability in the [defendant's] participation"—i.e., "truthful participation in the prosecution decision is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (citation omitted).  Thus, for the purposes of Section 1983 malicious prosecution claims, an officer actively participates in the decision to prosecute an individual when, for instance, he *deliberately* provides false information to the prosecutor; but the officer has not "participated" in the criminal proceedings in the relevant sense by negligently or innocently providing such information to the prosecutor.  *Id.* (citations omitted); *Sykes*, 625 F.3d at 314 ("It is absolutely clear, however, that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." (citations omitted)).

As noted above, Carroll has provided no evidence to suggest that Young did anything to deliberately prolong the prosecution of Carroll.  At best, Carroll alleges that Young merely failed to adequately investigate the case—he has provided nothing to suggest that Young purposefully conducted a shoddy investigation.  As Young's participation was truthful and without deliberate intention to harm (and Carroll has provided no evidence to the contrary), Defendants are entitled to summary judgment on the matter.  (*See* Carroll Dep. 214:16-24, 215:9-19 (noting that Carroll was not under the impression that Young acted to purposefully harm him)).

Defendants also argue that Carroll's malicious prosecution claim must fail because there are no facts indicating a lack of probable cause in the underlying action.  (Defs.' Mem. 8).  Probable cause "is a reasonable ground for belief of guilt . . . ."  *Maryland v. Pringle*, 540 U.S. 366, 371

(2003) (internal quotation marks omitted) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).  As the Sixth Circuit has noted:

> [I]t has long been settled that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."  Therefore, [when] Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim.

*Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (internal citation omitted) (citation omitted).  "An exception to [] [this] rule applies where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury."  *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008) (citing *Hinchman v, Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002)); *see also McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) ("If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  (citation omitted)).

    Carroll was indicted by a grand jury based on Miller's statement, as well as the three supporting witness statements.  (Carroll Dep. 158:6-13).  Once again, Carroll points to no evidence suggesting Young knowingly provided any false testimony to the grand jury to obtain the indictment.  Carroll argues that the indictment was faulty because the grand jury was presented the victim and witness statements he deems were not fully investigated.  (Carroll Dep. 153:3-22).  Carroll does not claim that Young knew that the complaint or witness statements were false, he merely contends that the statements should have been investigated further.  (Carroll Dep. 153:3-22).  Carroll's assertion that the statements presented to the grand jury should have been subject to further corroboration is insufficient to undermine the presumption that an indictment evidences probable cause.  *See Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) ("This Court

recognizes that an officer does not have to investigate independently every claim of innocence. . . . [T]he officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." (internal citation omitted) (citation omitted)); *see also Higgason*, 288 F.3d at 877.  As the Court has been provided no evidence to suggest that Young acted with malice in pursuing Carroll's prosecution or made any false statements before the grand jury, Defendants' motion for summary judgment on the matter is granted.

### c.    Supervisory Liability

Carroll alleges that the City failed to "adequately supervise, discipline, and train the individual officers of the Russell Springs City Police Department, including . . . Young."  (Am. Compl. ¶ 91).  He avers that the City  "failed to supervise the Defendants in constitutionally adequate law enforcement practices, particularly those concerning interviews of suspects, the preparation of forensic reports, and the production of exculpatory evidence, thereby encouraging and/or permitting these employees . . . to engage in a reckless investigation . . . ."  (Am. Compl. ¶ 93).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *accord Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485

U.S. 112, 138 (1988) (Brennan, J., concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986). The Sixth Circuit has explained:

> It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.  The local government's policy or custom must be the moving force of the constitutional violation in order to establish the liability of a government body under § 1983.

*Searcy*, 38 F.3d at 286 (internal quotation marks omitted) (internal citations omitted) (citation omitted).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  As noted above, there was no constitutional violation by Young, so *Monell* liability cannot be imputed to the City for its policies or customs.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Assuming arguendo that there were facts showing a constitutional violation by Young, no evidence in the record is cited to suggest that the City acted negligently in its supervision, training, or discipline of Young.  To succeed on a failure to train or supervise claim, a plaintiff must prove: "(1) the . . . supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted).  A claim based upon an alleged negligent failure to

15

adequately supervise, however, is insufficient to establish a municipality's deliberate indifference. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 873 (6th Cir. 1982).   Evidence showing "several separate instances of the alleged rights violation," or a showing of a "history of widespread abuse that has been ignored[,]" is required for a successful claim.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005); *Berry*, 25 F.3d at 1354.  There is no evidence to suggest multiple instances of the violations alleged by Carroll, nor a "history of widespread abuse."  Carroll merely alleges that the City was negligent in its supervision of Young in this particular action. As such, there is no genuine dispute regarding the City's deliberate indifference and Carroll's negligent supervision claim must fail.

Municipal liability based upon negligent training requires a showing of three elements: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of . . . deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).  Carroll has admitted that he has no evidence to support his assertion that the City's training program is inadequate; he just simply believes such based on his time living in the city. (Carroll Dep. 185:18-21, 186:4-13); *see M.T. v. Saum*, 3 F. Supp. 3d 617, 623 (W.D. Ky. 2014) ("Mere speculation will not suffice to defeat a motion for summary judgment . . . ." (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996))).  Carroll's negligent training claim is thus without merit.[4]

---

[4] In Section 1983 cases, failure to train and failure to discipline claims are treated "as a singular claim of failure to train." *Lopez v. Hart Cnty.*, No. 1:16-CV-000560-GNS-HBB, 2018 U.S. Dist. LEXIS 167203, at *10 n.3 (W.D. Ky. Sept. 28, 2018) (citation omitted).

As there is no evidence of an underlying constitutional violation nor any disputable facts regarding Carroll's municipal liability claims on the merits, Defendants' motion for summary judgment is granted on this matter.

### d.    Failure to Intervene

Carroll alleges that the City "breached [its] legal and constitutional duties to provide exculpatory evidence to [Carroll], the prosecutor, [and] the court . . . ." (Am. Compl. ¶ 101).  To state a failure to intervene claim under Section 1983, Carroll must allege that the City "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) . . . had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  The City  may not be held liable unless there was "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (internal quotation marks omitted) (internal citation omitted).  "To succeed on a claim for failure to intervene, Carroll must show that there was an 'underlying constitutional violation.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 615 (6th Cir. 2022) (quoting *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413 (6th Cir. 2015)).  As noted above, there is no evidence that Defendants violated Carroll's constitutional rights.  Furthermore, there is no evidence to suggest that the City knew of or had an opportunity to prevent any alleged harm.  Therefore, the City is entitled to summary judgment on Carroll's failure to intervene claim.

### e.    Qualified Immunity

Defendants argue that to the extent Carroll's claims are asserted against Young, he is entitled to summary judgment because he is protected by qualified immunity. (Defs.' Mem. 27-30).  "[Q]ualified immunity protects government officials 'from liability for civil damages insofar

17

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Once invoked, the plaintiff must show that the defendant is *not* entitled to qualified immunity . . . [and] that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right." *Puskas v. Del. Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023) (quoting *Williams v. Maurer*, 9 F.4th 416, 430-31 (6th Cir. 2021)).  "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that:  (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citation omitted).  As noted above, no constitutional right was violated, and Young is thus entitled qualified immunity.

### 2. *State Claims*

#### a. **Negligent Supervision**

Carroll alleges that the City was "negligent in the training, supervision and discipline of the Defendants . . . ."  (Am. Compl. ¶ 107).  To maintain a claim for negligent training and supervision under Kentucky law, a "plaintiff must allege that the defendant knew or had reason to know of the employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (citation omitted); *Harrison v. Ellison*, No. 3:21-cv-174-RGJ, 2023 U.S. Dist. LEXIS 107975, at *49 (W.D. Ky. June 22, 2023) (citation omitted).

Carroll admitted in his deposition that he did not think Young was negligently supervised, but rather that his investigation should have been subject to review by an outside party.  (Carroll

18

Dep. 222:19-223:6).  This is an insufficient basis to create an issue of fact as to Carroll's negligent

supervision claim; there is no legal basis for the imposition of a "neutral" third party onto a police

department investigation.  Furthermore, no evidence has been presented to show that Young had

any "harmful propensities," much less any that the City knew or should have known about.  As

such, Defendants' motion for summary judgment is granted on this claim.[5]

### b.    Malicious Prosecution

Carroll alleges that Defendants pursued his prosecution "despite knowing that probable

cause did not exist to arrest or prosecute [Carroll]," and "disregarded their obligation to fully

investigate all exculpatory evidence which may have existed and all witnesses which may have

evidence either of the commission of the crime or [Carroll's] innocence of the crime." (Am.

Compl. ¶ 114).

To assert a malicious prosecution claim under Kentucky law, a plaintiff must demonstrate:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial
> proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the
> defendant acted without probable cause; 3) the defendant acted with malice, which,
> in the criminal context, means seeking to achieve a purpose other than bringing an
> offender to justice . . . 4) the proceeding . . . [was] terminated in favor of the person
> against whom it was brought; and 5) the plaintiff suffered damages as a result of
> the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016); *cf. Hunt v. Lawson*, No. 2007-SC-000438-

DG, 2008 Ky. LEXIS 234, at *11-12 (Ky. Oct. 23, 2008) (noting that actions for malicious

prosecution are disfavored because public policy favors the exposure of crimes and sustaining

actions in every case resulting in an acquittal or dismissal would have a chilling effect on the

prosecution of crimes) (citing *Davis v. Brady*, 291 S.W. 412, 412-13 (Ky. 1927); *Prewitt v.*

---

[5] Kentucky law construes a failure to discipline claim as a failure to supervise claim, and will thus be treated as one.  *Smith v. Brown*, No. 5:16-CV-00063-TBR, 2017 U.S. Dist. LEXIS 1441, at *5 (W.D. Ky. Jan. 4, 2017).

*Sexton*, 777 S.W.2d 891, 895 (Ky. 1989) (recognizing the general disfavor toward such actions and that the complaining party "must strictly comply with the prerequisites of maintaining an action for malicious prosecution." (internal quotation marks omitted) (citation omitted)).

With respect to the third element, malice "is the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40-41 (Ky. 1931) (citations omitted). [M]alice may be inferred from lack of probable cause . . . ." *Seiler Waterman, LLC v. RLB Props., Ltd.*, 610 S.W.3d 188, 199 (Ky. 2020). "Probable cause is that which 'would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime charged.'" *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (quoting *Louisville & N.R. Co. v. Sharp*, 140 S.W.2d 383, 385 (Ky. 1940)). "The burden in a malicious prosecution action is on the plaintiff to prove lack of probable cause, and probable cause issue is a question for the court to decide." *Collins v. Williams*, 10 S.W.3d 493, 496 (Ky. App. 1999) (citing *Prewitt*, 777 S.W.2d at 894-95).

Under Kentucky law, "[w]hen a grand jury, upon other testimony than that of the prosecutor alone, find an indictment to be a true bill, the presumption is prima facie that, as they, on their oaths, have said that the person indicted is guilty, the prosecutor had reasonable grounds for the prosecution." *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 607 (Ky. App. 2006) (quoting *Conder v. Morrison*, 121 S.W.2d 930, 931 (Ky. 1938)); *see Powell v. Cornett*, No. 3:11-cv-00628-H, 2013 U.S. Dist. LEXIS 56175, at *4 (W.D. Ky. Apr. 19, 2013) (noting that "[c]ourts have applied this same [principle] against police officer defendants." (citing *Davis v. McKinney*, 422 F. App'x 442, 443 (6th Cir. 2011))). Consequently, while a grand jury indictment raises a presumption of probable cause, this presumption can be rebutted by the plaintiff. *Conder*, 121, S.W.2d at 931-32. To overcome this presumption, a plaintiff must allege a "defect in the

20

probable cause or warrant or indictment or subsequent prosecution" or "suggest[] an improper

motive or [] improper acts" on the part of the defendants. *Wheeler v. Kirkland*, No. 07-CV-336-

JMH, 2008 U.S. Dist. LEXIS 11157, at *9 (E.D. Ky. Feb. 13, 2008).

As noted in reference to the federal claims, Carroll has not demonstrated that the alleged

inadequacy of the witness statements presented to the grand jury were sufficient to undermine the

presumption that the indictment implies probable cause.  He has also not provided any evidence

to suggest that Young acted improperly or with malice in his contributions to securing the

indictment.  (*See* Carroll Dep. 214:16-24, 215:9-19 (noting that Carroll was not under the

impression that Young acted purposefully to harm him)).  As such, Defendants' motion for

summary judgment is granted as to this claim.

### c.      Intentional Infliction of Emotional Distress

Carroll alleges that Defendants intentionally inflicted emotional distress through the

inadequacy of the criminal investigation.  (Am. Compl. ¶¶ 121-23).  To successfully demonstrate

an intentional infliction of emotional distress claim:

> (1) the wrongdoer's conduct must be intentional or reckless, (2) the conduct must
> be outrageous and intolerable in that it offends against generally accepted standard
> of decency and morality; (3) there must be a causal connection between the
> wrongdoer's conduct and the emotional distress; and (4) the emotional distress must
> be severe.

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999) (citations omitted).  The tort "is intended to

redress behavior that is truly outrageous, intolerable and which results in bringing one to his

knees."  *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000) (citation omitted).

"[U]nder Kentucky law, when damages for emotional distress are available through

another state tort claim, and the conduct was not intended to only cause emotional distress, a claim

for the tort of intentional infliction of emotional distress will not lie."  *Howell v. Sanders*, 755 F.

Supp. 2d 789, 799 (E.D. Ky. 2010) (citation omitted).  Emotional damages are available in action

for malicious prosecution.  *Howell*, 755 F. Supp. 2d at 799.  Therefore, because the traditional tort

of malicious prosecution would have provided recovery for emotional distress for Carroll, he

cannot bring a discrete action for intentional infliction of emotional distress.  *Banks v. Fritsch*, 39

S.W.3d 474, 481 (Ky. App. 2001).

### d.      Negligent Infliction of Emotional Distress

Carroll alleges that Defendants negligently inflicted emotional distress upon him through

the inadequacy of their investigation.  (Am. Compl. ¶ 128).  To successfully present a negligent

infliction of emotional distress claim, Carroll must demonstrate the four traditional negligence

elements:  (1) duty; (2) breach of duty; (3) legal causation; and (4) injury.  *Osborne v. Keeney*, 399

S.W.3d 1, 17 (Ky. 2012) (citation omitted).  Additionally, he must show that he suffered a "severe"

or "serious" emotional injury.  *Id.*  "A 'serious' or 'severe' emotional injury occurs where a

reasonable person, normally constituted, would not be expected to endure the mental stress

engendered by the circumstances of the case."  *Id.* (citations omitted).  "Distress that does not

significantly affect the plaintiff's everyday life or require significant treatment will not suffice."

*Id.* (citations omitted).  Furthermore, Carroll "must present expert medical or scientific proof to

support the claimed injury or impairment."  *Id.* at 18 (citation omitted).

Carroll has failed to prove a breach of any duty.  Accordingly, Defendants are entitled to

summary judgment on this basis.

### e.      Qualified Immunity

Kentucky has its own version of qualified immunity that protects an officer's performance

of discretionary acts.  An officer's act is protected if it is:  (1) discretionary, (2) performed in good

faith, and (3) within the scope of his authority.  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citations omitted).

As for the first element, "[t]he essence of a discretionary power is that the person . . . exercising it may choose which of several courses will be followed.  The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment." *Franklin Cnty. v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997) (citation omitted).  An act is discretionary "when the act may be performed in one or two or more ways . . . ." *Haney v. Monskey*, 311 S.W.3d 235, 240 (Ky. 2010) (citation omitted).  On the other hand, a ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522 (citation omitted).  Comparatively speaking, a discretionary act requires "policy-making decisions and significant judgment" while ministerial acts require little thought and are "merely routine" functions. *Stratton v. Kentucky*, 182 S.W.3d 516, 519 (Ky. 2006) (citation omitted).  "The Supreme Court of Kentucky has explained that when 'investigative responsibilities,' have mandatory components . . . those responsibilities are ministerial.  However, *investigations including 'police investigations,'* also involve discretionary responsibilities that arise '[a]fter performing . . . ministerial duties.'" *Juillerat v. United States*, No. 3:16-cv-00276-TBR, 2016 U.S. Dist. LEXIS 145936, at *23 (W.D. Ky. Oct. 21, 2016) (alteration in original) (emphasis added) (internal citation omitted) (quoting *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 478 (Ky. 2006)).

A police investigation may be performed multiple ways and involves numerous exercises of judgment, making it a discretionary act.  Furthermore, there is no proof suggesting that any alleged shortcomings in Young's investigation were conducted pursuant to mandatory

responsibilities; without such evidence, the conclusion that a police investigation is discretionary cannot be rebutted. *See Haney*, 311 S.W.3d at 240 ("[D]iscretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." (citation omitted)). Therefore, there is no genuine dispute that Young was acting in his discretionary capacity when conducting the investigation.

If a defendant asserting *Yanero* immunity shows that his act was discretionary and within the scope of his authority,[6] the burden shifts to the plaintiff to show that the act was performed in bad faith. *Yanero*, 65 S.W.3d at 522. Bad faith "can be predicated on a violation of constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . ." *Id.* (citation omitted). Official immunity will be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Id.* at 523 (alteration in original) (emphasis omitted). It can also "be demonstrated by objective unreasonableness or by a subjective intention to harm (i.e., a 'corrupt motive')." *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir. 2011) (citing *Yanero*, 65 S.W.3d at 523).

Once again Carroll has marshalled no evidence that Young acted in bad faith during the investigation. It has been established that Carroll did not believe, nor did any facts suggest, that Young acted with malicious intent to harm in pursuing Carroll's arrest and conviction. Moreover, there is no proof that Young knew or reasonably should have known that his actions would violate

---

[6] Plaintiff has not asserted that Young acted outside of his authority in conducting the investigation.

Carroll's constitutional rights because it has been determined that there is no evidence of such violation.  Therefore, Young is entitled to qualified immunity pursuant to state law.

### 3.      Respondeat Superior

Finally, Carroll has asserted a claim for *respondeat superior* under Kentucky law.  (Compl. ¶¶ 109-11).  Under this doctrine, an employer can be vicariously liable for the torts committed by its employee when the employee is acting within the scope of his or her employment.  *See Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 50 (Ky. 2008).  As outlined above, however, Carroll has failed to prove that Young committed any tort, and the Court has dismissed all state law tort claims.  Accordingly, because Young did not commit any tort against Carroll, Carroll does not have a *respondeat superior* claim against the City, and summary judgment will be granted on this claim as a matter of law.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Defendants' Motion for Summary Judgment (DN 47-1) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2.      Defendants' Motion for Leave to Exceed Page Limits (DN 47) is **GRANTED**.

3.      The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge

United States District Court

September 20, 2023

cc:      counsel of record